Submitted on record and briefs August 23, affirmed
December 14, 1972

SHINN ET UX, *Respondents, v.* BLINKHORN ET AL,
*Appellants.*
504 P2d 102

John G. Meyer, Eugene, for appellants.

Butler, Husk & Gleaves, Eugene, for respondents.

BRYSON, J.

Plaintiffs brought this suit seeking an accounting and a money judgment. The trial court rendered a decree for plaintiffs, and defendants have appealed.

Plaintiffs owned real property in Eugene, Oregon, subject to a mortgage which was in default. In June of 1969 plaintiffs entered into an oral agreement with defendant James R. Blinkhorn, a realtor, and Blinkhorn Company for the sale of the property. The agreement was reduced to writing but not executed by plaintiffs. Plaintiffs were to convey the property without consideration to defendant Blinkhorn Company, of which defendant James Blinkhorn was an officer and stockholder. Blinkhorn Company was to bring plaintiffs' mortgage payments current and make repairs to the house in preparation for sale. Blinkhorn Company would sell the property, deduct its expenses, and divide equally any profit with plaintiffs. The agreement was to terminate when the property was resold and, until that time, Blinkhorn Company was

to have control of the property and the right to make all decisions regarding the sale.

Plaintiffs conveyed title to the real property to Blinkhorn Company on June 30, 1969. Blinkhorn Company refurbished the house and deeded it to defendants James R. Blinkhorn and Elnora Blinkhorn. Blinkhorns sold the house and conveyed title to William G. Cassara and Karen W. Cassara, husband and wife, on October 15, 1969.

Cassara was in the swimming pool construction business. At approximately the same time Cassara bought the property, defendant James Blinkhorn bought a swimming pool from Cassara to be constructed at his own home. The down payments on the contract to purchase the real property and the swimming pool contract were approximately the same, $4,350 and $4,200, respectively. Blinkhorn and Cassara agreed to offset and cancel the down payments on each transaction.[1] Although each contract recites that the down payment was received, the parties simply exchanged credits, disregarding small amounts for earnest money and a closing fee. Mr. and Mrs. Cassara, upon receiving title to the property, mortgaged the same and this money paid off the plaintiffs' mortgage

---

[1] Blinkhorn testified as follows:

"Q   And in the Exhibit No. 5, the swimming pool contract, it indicates that there was a downpayment receipted for, by Mr. Cassara of $4200, is that correct?

"A   I think it's slightly in excess of that, but it's approximately right.

"Q   All right. And did you tender to him $4200 in cash?

"A   No.

"Q   And where did this $4200 come from?

"A   It was a downpayment on the Emerald Street house that was conveyed to me by Mr. Shinn."

to Pacific First Federal Savings and Loan. The defendant James R. Blinkhorn received a real estate commission of $1,194 on the sale of the property to Mr. and Mrs. Cassara.

Plaintiffs were never consulted about the sale or its terms. When plaintiffs learned of the sale in January, 1970, they demanded some $1,600, which was one-half of what they felt had been the profit on the sale of the property. Blinkhorn refused, saying he had received no profit from the sale, but that a profit would be realized when the pool was built. After the sale, Cassara experienced financial difficulty and never built the pool.

Plaintiffs alleged that defendants had received a substantial profit from the sale to Cassaras and that defendants refused to surrender to plaintiffs one-half of the net profits received from the sale in violation of the agreement. Plaintiffs prayed that defendants be required to account for the expenses and profits from the sale; for an order declaring that defendants hold the net profits in trust; for a judgment against defendants for fifty percent of the profits, with interest; and for such other and further relief as the court might deem just and equitable.

The trial court found "* * * that the Plaintiff[s] was [were] entitled to an accounting * * * that the Defendants realized a profit when they obtained a contract for the construction of a swimming pool at the Blinkhorn residence * * * that Plaintiffs were entitled to recover the amount shown in the accounting which was received in evidence * * *."

The sole assignment of error is that "[t]he court erred in that as a proposition of law, profits in a joint

venture need not be realized before there is a division of profits among the parties to the venture."

■ There is nothing in the decree or record to indicate that the court found that there was a "joint venture" between the parties. The trial court merely found as above stated and entered a decree accordingly in favor of plaintiffs in the sum of $1,604.28 with interest. Essentially, the parties are in agreement on the facts and concede that the issue on appeal is whether defendants properly refused to account for and pay over to plaintiffs one-half of the alleged profits on the sale of the property. The plaintiffs called defendant James R. Blinkhorn as a witness, and the defendants called no witnesses. We stated, in *Hayes v. Killinger*, 235 Or 465, 477, 385 P2d 747, 753 (1963):

> "Joint control as well an agreement to share the profits and losses is generally essential to a joint adventure or partnership. * * *"

*See also, Drake Lumber Co. v. Paget Mortgage Co.,* 203 Or 66, 274 P2d 804 (1955); *Portland T. & S. Bank v. Lincoln Realty Co.,* 180 Or 96, 170 P2d 568 (1946); 46 Am Jur 2d, Joint Ventures § 12 (1969). In this case, plaintiffs relinquished all control and decision-making power to defendants upon conveying the property.

■ It is clear that plaintiffs intended to impose definite binding restrictions on defendants' disposition of the property. Both parties were aware that defendants received title to the property, subject to the obligation to pay plaintiffs fifty percent of the net profits at the time of sale. The testimony disclosed that although Mr. and Mrs. Blinkhorn held a contract whereby Cassara would construct a swimming pool at their home as a result of the sale, the contract with Cassara was

presently of no value because of Cassara's poor financial condition.

We conclude, as did the trial court, that the plaintiffs were entitled to an accounting showing the details of the sale from Mr. and Mrs. Blinkhorn to Mr. and Mrs. Cassara; that the defendants realized a profit when they obtained a contract for the construction of a swimming pool at their personal residence and plaintiffs are entitled to judgment against the defendants, together with interest.

■ From the evidence, we conclude that defendants breached their contractual obligations to plaintiffs. The defendants took title to the real property pursuant to the agreement between the parties. Plaintiffs' purpose in entering into the agreement was to liquidate the property. Defendants breached their contractual obligation by entering into a speculative unsecured contract for a swimming pool which could delay disposition of any proceeds from the sale of the property for an unknown period of time; or the sale to Cassaras, which provided that Cassara would construct a swimming pool as a down payment on the purchase, could eventually result in the title to the property again vesting in defendants.

Defendants argue that the sale would produce a profit—a contract right—but that it has not been reduced to cash. Whether this asset will ever be reduced to cash is a matter of conjecture. In any event, the risk of speculation should be borne by the defendants. The written memorandum of agreement between the parties was received in evidence and provided "that when the property has been resold, after all expenses have been computed, Delos D. Shinn and Doris L. Shinn shall receive one-half the profit after expenses including the

cost of bring [sic] the loan current have been deducted, together with the commission [defendants' realtor's commission on the sale]."

The decree of the trial court is affirmed.